UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM and MARTA/ATU LOCAL 732 EMPLOYEES RETIREMENT PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for WASHINGTON MUTUAL BANK, *et al.*,<br><br>Defendants. | CASE NO. C09-134 RSM<br><br>ORDER GRANTING THE FEDERAL DESPOSIT INSURANCE CORPORATION'S MOTION TO STAY |

## **I. INTRODUCTION**

This matter comes before the Court on Defendant Federal Deposit Insurance Corporation's (the "FDIC") Motion to Stay. (Dkt. #17). The FDIC argues that 12 U.S.C. § 1821(d) requires a stay of all proceedings pending the exhaustion of statutorily mandated administrative remedies. Plaintiffs respond a stay is not necessary because the FDIC has constructively denied its claims. Plaintiffs alternatively contend that if a stay is granted, the Court should stay the action only as to the FDIC, and permit the action to proceed as to all other Defendants. The remaining Defendants do not oppose the FDIC's motion to stay, but seek two carve-outs from the stay sought by the FDIC.

For the reasons set forth below, the Court GRANTS the FDIC's motion in its entirety.

ORDER
PAGE - 1

## II. DISCUSSION

**A. Background**

On August 4, 2008, Plaintiffs New Orleans Employees' Retirement System and MARTA/ATU Local 732 Employers Retirement Plan (collectively "Plaintiffs") filed a class action in King County Superior Court against Washington Mutual, Inc., Washington Mutual Bank, and various other Washington Mutual entities and individual defendants (the "WaMu Defendants"). Plaintiffs alleged violations of the Securities Act on behalf of all persons and entities who purchased or otherwise acquired certain Washington Mutual Mortgage Pass-Through Trust Certificates between January 26, 2006 and November 1, 2007. These securities were mortgage-backed securities that would provide monthly distributions of interest and principal on future cash flows from the mortgages. As borrowers paid their mortgages, distributions were to be made to the securities' purchasers.

Roughly two months after Plaintiffs filed their complaint, the Office of Thrift Supervision ("OTS") – an agency of the United States Department of Treasury that regulates federal savings associations – declared Washington Mutual Bank insolvent. The OTS also appointed the FDIC as its receiver pursuant to 12 U.S.C. § 1821(c). Notably, the FDIC is a corporation organized and existing pursuant to the Federal Deposit Insurance Act, 12 U.S.C. § 1811, *et seq*. The FDIC provides deposit insurance and guarantees the safety of deposits in certain member banks.

Washington Mutual Inc. subsequently filed a notice of stay in the state court action, advising that it had filed for bankruptcy, and acknowledging that the FDIC had been appointed as the receiver for Washington Mutual Bank. Moreover, on December 16, 2008, Plaintiffs filed an amended complaint in the state court action, excluding Washington Mutual Inc. as a Defendant. Plaintiffs retained the allegations in the original complaint against all other Defendants. Plaintiffs acknowledged in their amended complaint that the OTS had placed Washington Mutual Bank into the receivership of the FDIC.

More than one month later, the state court granted the FDIC's unopposed motion to replace Washington Mutual Bank as a defendant in the state court action. Shortly thereafter,

the FDIC removed the case to this Court pursuant to 12 U.S.C. § 1819(b)(2)(B). The FDIC now seeks a stay pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which is codified throughout sections of 12 U.S.C. The FDIC contends that § 1821(d) of the FIRREA mandates a stay for a period of 180 days after Plaintiffs file proofs of claim with the FDIC as receiver, or until the completion of the administrative procedures, whichever comes first. The Court now addresses the substance of the parties' arguments.

**B. 12 U.S.C. § 1821(d)**

Section 1821(d) of the FIRREA generally deals with the FDIC's powers and duties when acting as a receiver of a failed financial institution. 12 U.S.C. § 1821(d), *et seq.* Section 1821(d)(3)(A) specifically provides the FDIC, acting in its capacity as a receiver, with the authority to determine the scope of any claims against a failed depository institution. The procedures indicate that if a claimant submits a timely claim to the FDIC, the FDIC must determine within 180 days whether to allow or disallow the claim. *See* 12 U.S.C. § 1821(d)(5)(A)(i). If the FDIC disallows the claim or otherwise fails to determine the claim, the claimant then has 60 days to request administrative review or file or continue suit on such claim in district court. *See* 12 U.S.C. § 1821(d)(6)(A)(ii).

The Ninth Circuit has consistently held that district courts lack jurisdiction if a claimant does not exhaust FIRREA's administrative process. *See*, *e.g.*, *Intercontinental Travel Marketing, Inc. v. FDIC*, 45 F.3d 1278, 1283 (9th Cir. 1994) ("Because [the Plaintiff] failed to properly exhaust the statutorily mandated exhaustion requirements of § 1821(d), no jurisdiction exists over its action."); *Henderson v. Bank of New England*, 986 F.2d 319, 320-21 (9th Cir. 1993) ("A claimant must therefore first complete [FIRREA's] claims process before seeking judicial review."); *Abbot Bldg. Corp., Inc. v. United States*, 951 F.2d 191, 194, n.3 (9th Cir. 1991) ("FIRREA did create a claims procedure, and required its exhaustion."). Other circuits are in agreement, and have additionally held that the FIRREA makes participation in the administrative claim review process mandatory, regardless of whether the claims were filed before or after the FDIC was appointed receiver of the failed institution.

*See Carney v. Resolution Trust Corp.*, 19 F.3d 950, 955 (5th Cir. 1994); *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 485 (9th Cir. 1993); *Marquis v. FDIC*, 965 F.2d 1148, 1151 (1st Cir. 1992); *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir. 1991).

Based on this well-established case law, it is clear that the FDIC is entitled to a stay in this case. There is no dispute that Plaintiffs have not exhausted the administrative process. In fact, Plaintiffs only recently submitted their proofs of claim with the FDIC on February 12, 2009. Nevertheless, Plaintiffs argue that the Court should deviate from the statutorily mandated exhaustion requirement on the grounds that the FDIC has already constructively denied Plaintiffs' claim. In support of this argument, Plaintiffs contend that the FDIC has publicly reported on its own website that it "does not anticipate that subordinated debt holders of the bank will receive any recovery on their claims." (Dkt. #21, Ex. D). Plaintiffs further indicate that because their claims fall within the umbrella of subordinated debt, the FDIC has essentially acknowledged that Plaintiffs will not recover on their proofs of claim submitted against Washington Mutual Bank.

However, Plaintiffs argument is without merit for two reasons. First, the FDIC indicates that the securities issued by the WaMu Defendants that forms the basis of this lawsuit do not constitute subordinated debt. Specifically, the securities issued by the WaMu Defendants are not obligations of the bank, but rather fall into the category of general creditor claims. There is no clear reliability to Plaintiffs' statement that the FDIC has already denied their claims.

Second, and more importantly, Plaintiffs cannot point to any statute or case law that permits a claimant to bypass FIRREA's administrative procedures due to "constructive denial" of the claim. Plaintiffs' argument simply has no basis in the law, and would clearly undermine the Congressional purpose in enacting FIRREA's administrative process. Simply put, allowing "[j]udicial review of claims before an administrative review . . . would render the administrative scheme established [by FIRREA] meaningless because creditors essentially could opt out of the administrative review." *Brady Dev. Co. v. Resolution Trust Corp.*, 14 F.3d 998, 1006 (4th Cir. 1994) (citation omitted).

ORDER
PAGE - 4

Plaintiffs also argue in the alternative that if a stay is entered, it should only apply to the FDIC. Plaintiffs contend that the plain language of § 1821(d) only allows the FDIC to review claims against the failed institution. Additionally, Plaintiffs indicate that their claim against the FDIC is contingent upon first finding liability against the WaMu Defendants, and therefore allowing the case to proceed against all other Defendants will not prejudice the FDIC.

These arguments are likewise without merit. The statutory framework of § 1821(d) does not expressly provide for a stay of some claims while others are permitted to proceed against other defendants. Indeed, Plaintiffs point to no case law that makes such a distinction. Instead, the clear weight of authority broadly applies FIRREA's exhaustion requirement. For instance, one court confronted with FIRREA's statutory framework and multiple defendants, found that a stay of the entire proceedings as to all defendants, and not just the receiver, was justified under § 1821(d). *See Simms v. Biondo*, 785 F.Supp. 322, 326 (E.D.N.Y. 1992) (finding that "judicial resources would be wasted if the plaintiffs could press forward now in the litigation against every defendant except the depository institution"). Another court considering the applicability of affirmative defenses and counterclaims raised by a defendant under § 1821(d) held:

> [I]t is patently clear that the jurisdictional bar of section 1821(d)(13)(D) *reaches all claims* seeking payment from the assets of the affected institution, *all claims* seeking satisfaction from those assets, and *all claims* relating to any act or omission or either of the institution or the receiver regardless of whether the action is framed as a claim, counterclaim, or affirmative defense.

*FDIC v. Updike Bros., Inc.*, 814 F.Supp. 1035, 1040 (D. Wyo. 1993) (emphasis added).

These interpretations apply with equal force to the facts and circumstances of this case. All of Plaintiffs' claims relate to the conduct of the WaMu Defendants and their failure to conform with the relevant regulations proscribed by the Securities Act of 1933, as codified by 15 U.S.C. §§ 77k, 77l(a)(2), and 77o. (Pls.' Compl., ¶ 1). Furthermore, all of Plaintiffs' claims arise out of certain mortgage-backed securities that they purchased from the WaMu Defendants. Whether Plaintiffs must first establish liability against the WaMu Defendants is moot for purposes of this analysis because it is undisputable that these claims are related to

the claims against the FDIC. Therefore all of Plaintiffs' claims are subject to FIRREA's statutory framework.

Plaintiffs also note that there exists a related securities action against the WaMu Defendants filed in this district court. *See Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortgage Pass Through Certificates, Series 2006, ARI, et al.*, C09-0037 MJP. Given the limited and depleting sources of recovery available from the WaMu Defendants, Plaintiffs contend that a stay will severely prejudice any potential relief in this case because the Plaintiffs in the related case will be able to pursue their judicial remedies unimpeded. However, the Court notes that an answer has not yet been filed in that case, and the FDIC has moved to dismiss the claims in the related case. And while there is certainly no guarantee that the motion will be granted, the FDIC in that case make the same arguments based on the same statutory scheme of FIRREA presented here. The Court additionally notes that there have been several more motions filed in that case since the FDIC has filed its motion to dismiss. Thus, it appears that a judicial remedy is not imminent. Under such circumstances, the stay shall apply to all Defendants.

Lastly, the WaMu Defendants argue that although they do not oppose a stay, the order should provide two carve-outs. First, they suggest that the order should contain an exception that allows for a motion to consolidate this action with the related case filed in this district court mentioned above. Second, they suggest that the order should allow for Plaintiffs to file a motion for an appointment of a lead plaintiff. In support of these requests, the WaMu Defendants cite to the Private Securities Litigation Reform Act and its procedures for appointing a lead plaintiff.

However, these references are unavailing in light of the plain language of § 1821(d) of the FIRREA and its corresponding case law. Nothing in the statutory framework of § 1821(d) provides for such carve-outs, and the WaMu Defendants cannot point to any case that allows for such an exception. In addition, creating carve-outs to any order in this case would further complicate matters in light of FIRREA's complex statutory scheme rather than simplifying them as the WaMu Defendants suggest. For example, the FDIC indicates it would oppose any

ORDER
PAGE - 6

motion to consolidate in light of FIRREA's mandatory exhaustion requirement that applies to all claimants. The FDIC also contends that the process of selecting a lead plaintiff would require the FDIC to litigate core issues of this case, thereby undermining the purpose of any stay imposed by the Court. As a result, allowing for further litigation to occur would only thwart FIRREA's mandate to first exhaust the administrative process. Indeed, a primary Congressional purpose underlying FIRREA is to avoid "the costs of litigation [that] would further exacerbate an already catastrophic situation." *Updike Bros.*, 814 F.Supp. at 1040. Under such circumstances, the Court finds no justification to make any exceptions to its order staying the case.

### III. CONCLUSION

Having reviewed the relevant pleadings, and the remainder of the record, the Court hereby finds and ORDERS:

(1) The Federal Deposit Insurance Company's Motion to Stay (Dkt. #17) is GRANTED. The Court shall STAY all proceedings until August 11, 2009, or 180 days after February 12, 2009, the date on which Plaintiffs filed proofs of claim with the FDIC. If the FDIC completes the administrative process earlier, the FDIC shall inform the Court and the stay will be lifted at that time.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 16th day of April, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE